is United States versus Kostopoulos, if I'm pronouncing that correctly, appellant. You may begin when you're ready. May it please the court. My name is Robin Farnsworth and I represent Mr. Kostopoulos. Mr. Kostopoulos raises two issues in this case. One issue is whether his statements to local police officers denying he took money from a driver at a traffic stop and denying he saw anyone approach him at the traffic stop were sufficient to establish the federal crime of obstruction of justice. The parties agree that the standards set forth in the Supreme Court case of United States versus Fowler controls this issue, but we disagree on whether the proof at trial met this standard. Fowler requires that the government show that there was a reasonable likelihood that Mr. Kostopoulos' statements would be relayed to a federal officer and the government failed to meet this burden. Why isn't the testimony that local police departments refer potential criminal civil rights violations to the FBI and then as I understand that the FBI screens the referral to see if it has merit, why isn't that sufficient to make it reasonably likely that the information would make it to a federal officer? Because that in this case that any local or state officer relayed any information to the FBI or would likely be relaying information to the FBI. If the local officers work together with the FBI on a regular basis, why wouldn't that make it reasonably likely? Setting aside whether it actually did make it to the federal officers. There was no testimony in this case that the local officers worked with the FBI. There was only general testimony that the FBI has a task force and that they work in general with local police officers but not in this case. No local officer testified to that and no federal officer testified to that. Did the testimony, the general testimony that you're talking about, did that tie the working together specifically to criminal civil rights violations? It did, Your Honor, but it did not tie it to this specific case or this specific civil rights violation. There was no testimony of any connection between the Homestead Police Department or the Miami-Dade Police Department with the FBI. Where in the record is the general testimony that you're referring to? The general testimony is a testimony of FBI Agent Castaneda and that's found at docket entry 234, pages 3 through 12. And if you look through that testimony, there's nothing specific about this case except to say that the agent became aware at some point that there was an FBI investigation. But he didn't say how it came about, didn't say specifically when it came about, and he didn't testify about any routine or procedure by which it would be assured that this information would be relayed to the FBI. He didn't say anything about Mr. Kostopoulos' statements or that he was even aware of the statements. And so in addition... What's your authority that the link has to be to this specific case? Generally, the Fowler case, well generally, Your Honor, if you look at the other cases, unless there's a link, all you're left with is the fact that there's a federal case. If it's true that in every federal case that that establishes a link, that that would be in contradiction to what Fowler said, which is that the government must show that it's reasonably likely that there has to be a link. It must be reasonably likely that there be a connection. Otherwise... But you agree if there were a continuous working relationship, that you wouldn't have to show that it was reasonably likely that this case would get to the federal officers? I agree, Your Honor, and this court's case of Aguera underscores that point. That was an appeal from the denial of a 2255, and that's the only 11th Circuit case since Fowler that has found that the reasonable likelihood standard did apply and was met by the government. And the reason it was found to be met in that case is because in that case, the government showed a standard practice, that a standard practice existed of forwarding information from questionable shootings to the FBI, and that a massive investigation resulted each time a shooting occurred. We simply don't have that kind of evidence in this case. As a police officer, was Costopoulos aware that the police department had a working relationship with the FBI? There was no testimony to that, Your Honor. There was no testimony to that at all. At the time that his statements were made, there was no evidence at all that any local officer intended or expected that the statements would be conveyed to the FBI, and that includes Pamela Jackson from Internal Affairs at Miami-Dade, which is a department that Mr. Costopoulos worked with. And remind me, what was the time gap between when the state officers got involved versus when the federal officers got involved? State officers became involved in October of 2013, and the FBI did not become involved until December of 2013. So if no direct evidence is required and no standard practice evidence is required or anything like that, which is what the government seems to suggest, then what we're left with is a possibility standard, and that's the standard that the Fowler case rejected by the Supreme Court. I thought that Castaneda testified that the FBI ran a public corruption and civil rights squad in Miami, which included members of federal and state law enforcement. He did generally testify to that, Your Honor, yes, but he did not give any specific testimony about this case. He didn't even identify the local person, the branch person from the FBI who would have been in charge of this case. He gave no testimony about that at all. And the local agent, the branch agent, never testified. No one from the FBI testified except Castaneda, and his job was just to generally monitor all civil rights cases. But he said that he had no hands-on information, and that he really just didn't give much information at all. In this case, $330 is at issue. Is there any testimony in the record as to what the standard was when the federal officers would get involved, whether it was a dollar amount, whether it was every time there was a police officer involved in a public corruption? Was there anything that indicated what would trigger federal involvement? No, Your Honor, there wasn't. If there had been, then that could have certainly lent itself to a reasonable likelihood analysis, but there was no testimony about that at all. These were misdemeanor theft cases, and there was no testimony about theft becoming, that theft would be conveyed to the FBI at all. Yes, Castaneda testified that generally they look at all kinds of civil rights cases, but there was no connection. That's what's missing here. There's no connection between the task force and what happened in this case. Castaneda did not even testify that the task force became involved in this case. It's just that he monitors everything that happens. I guess he's advised of whatever happens, but we don't have the connection showing how this came about or why it would be reasonably likely. Well, doesn't the Rhonda decision indicate that you don't have to have proof of a federal investigation that it was ever initiated or that it was ongoing at the time? That's correct, Your Honor. You don't have to have proof of that, but you do have to show that it's reasonable that the statements are going to be relayed to the federal government in some way, and that's what's missing. That's what's missing here in this case. Mr. Kostopoulos also raises another issue in this case, which is whether the district court erred in allowing the introduction of charts and summaries of the money in his bank account that he shared with his wife in order to show a financial motive for theft. I have two questions for you about that. Yes, Your Honor. I don't want to take all of your time, but did you ever ask for a limiting instruction on the introduction of the financial information? I don't see it in the record anywhere. I don't believe so, Your Honor. You rely a lot on United States v. Reed. Yes, Your Honor. In the section in Reed that talks about introduction of financial information, isn't that just dicta? The court reversed and remanded because there was evidence of marijuana use, and it specifically indicated that was the reason for the reversal. That's correct, but the court and even the government has conceded that the Reed case is binding precedent on this court, and it seems that that is the standard that's been established, that in order to show any kind of financial evidence, there has to be an imminent financial burden or there has to be a dire consequence, and that's just simply not present in this case. I told you I have two questions. Let me ask one other. 403 analysis or prejudicial and probative. How was this evidence prejudicial to your client? This evidence was prejudicial because, first of all, it was improper for the jury to consider that the fact that someone uses overdraft protection, that tends to make it more likely than not that they're going to go and commit thefts, that they're going to become thieves and start stealing just because they use overdraft protection. Doesn't that mean they're more of a prudent person than the person that would not use overdraft protection? Well, but the way that it was presented to the jury, it was the fact that this was the motive. This was the motive for why these thefts took place, is the fact that he had overdraft protection, and that's just simply not, it wasn't reasonable for the jury to make that analysis or to make that connection, and that's what was improper in this case, and that's why it was prejudicial to Mr. Costopoulos, because that's what the government argued, that the fact that he had overdraft protection meant that he must be a thief, and that's why, first of all, it wasn't relevant, and second of all, it was highly prejudicial and should have been excluded because it definitely had the tendency to mislead, confuse, and prejudice. Didn't Mr. Costopoulos make it relevant by saying I make a high enough salary, I have no reason to steal or something along those lines, but the moment he said his salary was high enough that he wouldn't be a thief, doesn't that open the door for the government to introduce evidence of the financial records? I think only using the Reed standard, Your Honor, it would only be, that door would only be opened if they had evidence that he was facing a dire consequence or an imminent financial burden, and the fact that he uses overdraft protection simply doesn't rise to that level. My time is up. Thank you. Ms. Long. Thank you, Your Honor. May it please the court, Tanya Long for the United States. Seated at council table is Edward Stam, who tried the case with me in district court. Now, Your Honor, this court should affirm Costopoulos' convictions, both on the on the obstruction count, on count four, and on the evidentiary issue for several reasons. First, the district court properly admitted the financial motive evidence. I just kind of like to start with that because that was the ending point of my friend here, and I want to make clear that the motive that the government introduced evidence on was not that he was guilty because he had overdraft protection. What we put forth was that there was an imminent financial burden, which was evidenced by his bank statements that showed that he was consistently, around the time of the thefts, out of money at least a week before he was expecting to get his paycheck. So that meets the imminent financial burden test to the extent that it is a test in Reed. And the idea that this language of dire consequences should be so inflated to create a new test is not accurate because if you look at the Reed case, that was a case where the evidence that the government put forth was of a bankruptcy that had already happened. And so at the time that defendant committed the crimes in that case, he was no longer facing bankruptcy. The bankruptcy was already in process, and so this court said bankruptcy is meant to relieve a financial burden. So unless there's some evidence here that on the paychecks that he's getting from the bankruptcy court, he could not make a living on that, then we don't have an imminent financial burden. So what we have here is exactly that type of evidence where although this defendant was not in bankruptcy, he was living on a certain salary, and he was a very high salary, $120,000, and not able to make ends meet on that salary. Let me go back to Judge Branch's question to your opponent. Did Mr. Costopoulos open the door to this evidence? Yes, Your Honor, he absolutely opened the door. One of his main defenses at trial was that the government had failed to prove that he had a motive, that he would not do this because he was making $120,000 a year. He had no reason to steal $330. And so this evidence was important and highly probative to counter that theory. Let me step back for a moment because prior to trial, you had provided notice under 404B that you were going to introduce this evidence, correct? And so you had this hearing about whether it would be admissible or not admissible. The court made a pretrial ruling. It limited the scope of the evidence, so the defendant knew that the government was going to present the evidence and really had no choice but to respond to it. Isn't that fair? Well, Your Honor, we did definitely notice that we were intending to introduce this evidence. Now, it was not a Rule 404B motion. It actually came up on the defense motion in Lemonade to exclude landlord-tenant issues. So there was actually other evidence that the government had intended or possibly to put forth. Before we could put forth, and then after discussion and a hearing with the court, we came back and said instead of going down that road, we'd like to put forth this limited bank statement testimony and statements. And then, again, there was a motion to exclude that. And we had a hearing in front of the district court. And then the district court determined that only a limited amount of what the government wanted to put in could come in the four months directly surrounding this, these two thefts, rather than the 15-month period that the government wanted to put in. And so here, there's clearly not an abuse of discretion because the district court was narrowly limiting what could come in and really looking at this 403 analysis. So instead of this being under 404B, it's under Rule 403. And the standard of review on that is looking at it in the light most favorable to admission, maximizing its probative value and minimizing its danger of unfair prejudice. And I would note, even here today, that the defense has really failed to explain how this evidence was really unfairly prejudicial. Now, it may have been prejudicial because it was some evidence that he may be guilty. But there's nothing in the fact that he is overdrawn on his account, that he needs money, that is asking the jury to make a decision on anything besides the evidence in the case. In any event, the evidence here was overwhelming. The victims testified. They were clearly found credible by the jury. And the defense testified in his, the defendant testified in his own defense. And that's, that the jury was allowed to use that as substantive evidence of his guilt. In addition, there were statements that officers testified to from the defendant where he mentioned a robbery and said he had no reason to commit a robbery before anyone had mentioned a robbery in his presence. So there was clearly overwhelming evidence of guilt here. Unless the court has any further questions on that issue, I'd like to move to the 1512b3 issue. Here, so the government put on sufficient evidence that it was reasonably likely that a relevant communication would be made to federal authorities. Now, I wanted to correct a couple things. One is in the record, there was specific evidence that in this case that there were officers from, not only state and local officers on the task force with the FBI, but there were Miami-Dade Police Department officers on the task force. And Agent Castaneda testified about that at docket entry 234 on page 7. Why did the FBI get involved in this case? It did involve $330. So what triggered the FBI's involvement? Your Honor, this is an important priority for the FBI, as Agent Castaneda testified to, whenever police officers are abusing their authority. And so while the amount of money here may be small, the issue is much larger than that. Because we have a police officer who's roaming around Homestead largely unchecked and taking advantage of some of the most vulnerable members of our society who were unlikely to report him. People who are here illegally, who are living on a cash-based economy, and he's just taking their money. So I think the FBI here found a much greater interest than just the dollar amount here in why to take the case. Is there evidence in the record as to, there's been, we've talked about, and the record I think reflects that the FBI was monitoring cases and would get involved in certain cases. Is there any evidence in the record of what standards were being employed to make that decision? Not exactly, Your Honor. So Agent Castaneda testified that there were thresholds for whether a federal case would be brought. I'm not quite sure the page, but it is in the docket entry 234, and his testimony is fairly short. But that was brought up in the very initial of his testimony. And then on the redirect, we clarified with Agent Castaneda that even if a case doesn't meet the threshold to actually go forward with a prosecution, there's still a full investigation into the allegation to see whether it should be taken. And so the fact that there's that investigation at all is showing that the communication would be made to the FBI. So the FBI would get the information about Costopoulos having committed these crimes, and then would have to determine, are we actually going to prosecute? Even if they decided not to prosecute, that's still reasonably likely that the communication would be made to them. Well, I guess that's what I'm focusing on. I'm focusing on Fowler, and I'm focusing on how is this more than just a possibility? How is this a reasonable likelihood that this is going to happen? And so you're pointing to Castaneda's testimony. Is there any other place in the record we should be looking for whether the Fowler standard is met? Well, Your Honor, I think it's primarily Agent Castaneda's testimony. I think that with that alone, we've really met the standard here. Now, I believe there was another Miami Dade officer who did testify that he's aware of the FBI investigating civil rights cases in Miami Dade. That was Officer Dale Johnson. And I'm sorry, I don't have that site here for me. But that just shows that other people were aware. But because the defense has pointed out Homestead, I want to just make the point here that this is not a case where the only way that it could have gotten to the FBI was through the Homestead Police Department. Miami Dade Police Department was also involved. Their Internal Affairs Department were involved. And Agent Castaneda testified that a lot of the referrals that he receives are through the Internal Affairs Department. So the fact that Miami Dade was actually on the task force, the fact that their Internal Affairs was involved, and the fact that the case did make it to the FBI in this case and was prosecuted, those are all facts that this court can consider. Link that for me. How is Miami Dade involvement going to suggest that there was more than just a possibility of the feds getting involved? Yes. Well, Your Honor, a possibility is a very low standard, right? A possibility could be anytime anything happens. It's always possible that the FBI could somehow find out about it. And that's why, to be a reasonable likelihood, to be more than the possibility standard, it has to be more than remote, outlandish, or simply hypothetical. So here, the fact that there is a task force and the FBI has a unit specifically working on And not only that, they have a good relationship with locals, including Miami Dade Police Department, and work on a task force together on these types of cases. This makes it more likely than just a happenstance that someone on the task force or the Internal Affairs Department finds out about this case and refers it to the FBI, or even just mentions it to the FBI when they're talking about the types of cases where police officers are abusing their authority in their district. So, and I'd point the court to the Johnson case that we mentioned in our brief, which is a Ninth Circuit case, obviously not binding on this court. But the Ninth Circuit, in that case, found that the government had not put on any evidence about the reasonable likelihood. But in saying that, it mentioned there were several types of evidence that it likely could have proven the reasonable likelihood with. And those included that federal officials were in contact with the local police department, there it was actually a county jail, but that they were in contact with the county jail, they had investigated similar incidents at the county jail before, or that they had established a policy or a practice of investigating similar incidents in the area, assisting state and local officials with investigations into such incidents, or sharing information with state and local officials. So that's, several of those categories have been met in this case with the government's evidence. We've shown that there is a task force, that they're sharing information, that they're good relationships, that they were in contact with the local police department, which in this case is Miami-Dade. So the government's evidence here has definitely come above the possibility, outlandish, simply hypothetical stage in showing this evidence. But the government does not get involved in every public corruption case involving local law enforcement, correct? No, it does not. So it's making a determination, it's surveying these cases and deciding when to intervene. Yes, Your Honor, but to be clear, just because the FBI does not end up initiating a case and bringing it to the U.S. Attorney's Office and prosecuting, does not mean that that information in determining whether to bring a case, in determining whether it meets the threshold, is not considering, you know, the misleading statements by Detective Costopoulos. So just because the case does not go forward, I think as Judge Reeves, you said in the Ronda case, just because there is not a federal investigation ongoing at the time of the statements were made, or even if a federal investigation does not end up happening, there still can be a reasonable likelihood that the statements will be made to federal officials. Didn't Agent Castaneda testify that the FBI received referrals from local police departments about civil rights violations? And importantly, that the FBI at least followed up on every referral? Yes, Your Honor. So even though an investigation may not have been started, or a case may not have been brought, they did follow up on each one of those referrals? Yes, Your Honor. And I just want to point out lastly, that the Aguero case, while it is a case that met, this court found met the reasonable likelihood standard. This was a case that was a 2255. The case had originally been tried under the incorrect standard before the Fowler case. And this court was kind of looking back to determine, was it harmless? And so in that, I think this court noted that the proof there had more than met this standard, this reasonable likelihood standard. Because they pointed out a standard practice, but standard practice simply cannot be the standard. Because if it is, if there's a standard practice of referring these types of cases to the FBI, that means that it is all but, it's kind of the opposite of the outlandish standard. Unless there is a mistake, unless an officer is incompetent, or is trying to hide something and acting themselves improperly, or unless something falls through the cracks, with a standard practice standard, that would mean that unless one of those things happens, it's definitely going to get to the FBI, right? It's definitely going to get to the federal officials. And that's arguably a reasonable, beyond a reasonable doubt, standard. It's certainly a more likely than not standard. And that's a standard that's too high. Fowler said this standard is not as high as more likely than not, it's not as high as a preponderance of the evidence. So a standard practice is more than what's necessary. Now we look at the only other case that this court has applied the standard, and it also happened before Fowler's standard came down, and that was the Chaffin case. And in that case, the government had presented no evidence. So the fact that the only case that has been upheld under this new standard is Aguero, does not mean that standard practice is required. So thank you very much. We have one other question for you. You said there are no other cases, but are you familiar with the Ranga case? It's unpublished. Yes, Your Honor. I'm sorry. I am familiar with the Ranga case. I did not mean to leave that one out. It's unpublished. Right. Thank you. So with no further questions, we ask for this court to affirm the convictions. Thank you. Ms. Farnsworth, you'll have your full five minutes. With respect to the financial issue, the government concedes that it needs to show an imminent financial burden, and there was simply not an imminent burden on Mr. Kostopoulos in this case. Judge Reeves is absolutely correct that Mr. Kostopoulos had no choice but to address the money issue because of the pretrial matters that came up and because of how the case was presented by the government. Also, the evidence was not overwhelming in this case. No stolen money was found in Mr. Kostopoulos' car, even though he was stopped just a short time after the traffic stop was made. No stolen money was found in his wallet. He offered to be patted down and searched. They declined to do that, but there was testimony from Detective Mata that Kostopoulos took money from his pockets, and Mata did not say that any stolen money was found in the pockets. Gomez, the man involved in the September incident, he identified another person in the photo spread. He identified the person in photo number one. Mr. Kostopoulos was in photo number two, and also Gomez did not identify Mr. Kostopoulos at trial. Well, doesn't that make the introduction of that evidence, the financial evidence, more relevant when you have conflicting testimony in the case? More of a reason for the government then to establish the motive? I'm not sure. In other words, doesn't that conflicting testimony hurt you with regard to the introduction of financial evidence? The government would be in more need to introduce evidence of motive when you do have conflicting testimony. Well, the evidence was so shaky on ID, Your Honor, but I don't know that that necessarily means that the door is then open to show his bank records and to show that he has overdraft protection, that that somehow makes it relevant when there's the ID issue. Louisa Bravo, the person who supposedly ran up to him at the stop, she also failed to identify him at trial. So the evidence was not overwhelming in this case. With respect to the 1512 issue, it really comes down to Judge Branch's question, which is, why did the FBI get involved in this case? That's the question, and that's the question the government doesn't answer, and that's the question they don't answer at trial. They did not provide evidence at trial as to why the FBI became involved in this case. There was no evidence of any routine, procedure, practice. There was also no direct evidence as to how they became involved. They referred to general testimony that, oh, local agents know about this but in this case, the internal affairs age person, Pamela Jackson, did not contact the FBI about this case. She only became involved after the FBI already had the case. So she certainly did not give a referral to the FBI to make it reasonably likely that the communications would be conveyed. All the government has is general testimony, nothing specific about this case. At best, they've shown a possibility that the statements would be conveyed and not a reasonable likelihood. The government refers to the Johnson case. The Johnson case, the court found that the reasonable likelihood standard was not met in Johnson, even though that was a case that involved the use of force on an inmate. So the only case where the courts have found that it's sufficient is this court's case of Aguera, and in that case, there was a standard practice which made it reasonably likely that the information would be relayed, and that's what makes this case different. There is no reasonable likelihood evidence in the record in this case. Thank you.